UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES MCWILLIAMS,<br><br>       Plaintiff,<br><br>-against-<br><br>LIBERTY MUTUAL GROUP, INC. et al.,<br><br>       Defendants. | 24-cv-3432 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

James McWilliams developed cancer after working with valve products that contained asbestos. Am. Compl. ¶¶ 10, 12, Dkt. 25. In 2018, McWilliams sued Jenkins Bros., the manufacturer of the valves, in New York state court. ¶ 11. Jenkins was dissolved by the New Jersey Department of State in 2004, so the defense of this case was handled by defendant Liberty Mutual Insurance Group Inc. (one of Jenkins's insurers) and defendant Resolute Management Inc. (Liberty's claim administrator). ¶ 34. The jury awarded McWilliams a total of $23,000,000, which was subject to certain statutory offsets, resulting in a judgment of $18,633,617.67. ¶¶ 20, 22, 26. To date, this judgment remains unsatisfied. ¶ 30.

McWilliams says that Liberty and defendant Affiliated FM Insurance Company were Jenkins's insurers and Resolute was the third-party claims administrator handling the New York case. ¶¶ 2–6, 13, 16. McWilliams alleges that Liberty and Resolute handled the case in bad faith by failing to make good-faith efforts to settle the case, forcing McWilliams to take the case to trial, and then after losing, delaying payment of the judgment. ¶¶ 33–35, 55–70. McWilliams says that Liberty's and Resolute's aggressive tactics were part of a larger scheme by Resolute and its corporate parents to maximize the "float"—the cash generated by getting returns on insurance premiums for as long as possible—which is aided by delaying the payment of claims. ¶¶ 2, 41–44.

McWilliams now seeks to collect the New York state judgment from these three defendants. McWilliams brings claims against Liberty and Affiliated FM under New York Insurance Law § 3420. He also brings common-law claims against Liberty and Resolute for bad faith, negligence, and tortious interference. McWilliams has already amended his complaint once but has already forecasted that he needs to amend again, because he failed to satisfy one of the conditions to filing a § 3420 claim. The Court deals with all of this below.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## DISCUSSION

### I. Affiliated FM's motion to dismiss and Liberty's § 3420 argument

Affiliated FM moves to dismiss McWilliams's § 3420 claim, the only claim against Affiliated FM. Section 3420 permits a plaintiff like McWilliams to sue an insurer, but before doing so, the plaintiff must serve notice of entry of the judgment on the insurer and give the insurer 30 days to take action. N.Y. Ins. L. § 3420(a)(2), (b)(1). McWilliams does not contest that he was required to serve the notice of entry of his judgment on Affiliated FM and Liberty, nor does he contest that he didn't do this before filing this case. But McWilliams has apparently now served the right papers on Affiliated FM and Liberty, and both insurers agree that if McWilliams serves a second amended complaint pleading compliance with this condition, then the § 3420 claim may proceed. Dkt. 48 at 1; Dkt. 47 at 2. So McWilliams is permitted to file a second amended complaint on or before **September 3, 2024**, resolving this issue. Because Affiliated FM makes no other arguments and indicates that it would withdraw its motion to dismiss if McWilliams is permitted to amend, Affiliated FM's motion to dismiss is denied based on its concession. Liberty makes the same concession, and so for the same reason, its motion to dismiss as to the § 3420 claim is denied.

### II. Liberty's motion to dismiss

#### A. Bad-faith claim

Liberty also seeks dismissal of McWilliams's bad-faith claim. According to the complaint, this claim is brought pursuant to the common law and N.Y. Insurance Law § 2601. But McWilliams clarifies that the claim is just brought under the common law based on Liberty's bad-faith settlement conduct, "albeit informed in significant measure" by § 2601. Dkt. 39 at 5; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 126 (2d Cir. 2017) ("Section 2601 … does not allow for a private cause of action[.]").

"[I]nsurers owe a duty to those they insure 'to act in "good faith" when deciding whether to settle' a claim." *Scottsdale Ins. Co. v. Indian Harbor Ins. Co.*, 994 F. Supp. 2d 438, 450 (S.D.N.Y. 2014) (quoting *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) (internal quotation marks omitted)). But McWilliams was never Liberty's insured. Jenkins was. So the question here is whether insurers owe a duty of good faith to the insured's adversary in litigation.

The answer is no. "The duty of 'good faith' settlement is an implied obligation derived from the insurance contract." *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 452 (1993). As a result, a bad-faith claim can only be brought by a party to the insurance contract. New York courts have recognized one exception to this rule: a third party may bring a bad-faith claim against an insurance company when the insured assigns its contractual rights to that third party, most often a party that obtained a judgment against the insured. *See, e.g., Daus v. Lumbermen's Mut. Cas.*

*Co.*, 659 N.Y.S.2d 584, 584 (3d Dep't 1997). But "absent an assignment from the insured, 'an injured party's standing to bring an action against an insurer is limited to recovering only the policy limits of the insured's insurance policy'" under § 3420. *Nationwide Mut. Fire Ins. Co. v. Oster*, 147 N.Y.S.3d 97, 103 (2d Dep't 2021) (quoting *Corle v. Allstate Ins. Co.*, 79 N.Y.S.3d 414, 417 (4th Dep't 2018)).

In a letter requesting leave to amend his complaint, McWilliams argues that there is a "split" in New York state courts on whether an assignment is necessary before a judgment creditor can bring a bad-faith claim against an insurer. Dkt. 50 at 2. McWilliams points to *Cirone v Tower Insurance Co. of New York*, 908 N.Y.S.2d 178 (1st Dep't 2010). But *Cirone* offers no guidance. There, the First Department considered a bad-faith claim brought by a judgment creditor as an assignee of the insured. *Id.* at 178 ("[P]laintiffs, … as [the insured's] assignees, commenced this action based upon claims that [the insurance company] refused to settle the personal injury action within the policy limits in bad faith."). The First Department held that because the insured failed to comply with certain notice provisions necessary for bringing a bad-faith claim, the plaintiff's claim must also fail since an "assignee never stands in any better position than his assignor." *Id*. (citation omitted). *Cirone* therefore provides no support that a bad-faith claim can be maintained by a plaintiff who was not a party to the insurance contract and is not an assignee.

McWilliams also says that "even if an assignment of the insured's bad faith claims is requisite to the entitlement of the injured judgment creditor to bring its bad faith claims against the insurer," the New York courts have "adjudicated Liberty to be the 'real party in interest' in suits against its long-dissolved insured Jenkins," so the Court should "recogni[ze] an implied assignment of the bad faith claims." Dkt. 50 at 2 (citing *Germain v. A.O. Smith Water Prod. Co.,* 2013 WL 6065986 (Sup. Ct. 2013), *aff'd sub nom. In re New York City Asbestos Litig.,* 984 N.Y.S.2d 335 (1st Dep't 2014)). This argument makes little sense. A bad-faith claim belongs to the insured by virtue of the insurance contract. That is true whether or not the insured chooses to assert his bad-faith claim or has an incentive not to do so. McWilliams fails to explain why Liberty's relationship with Jenkins would transfer Jenkins's privileges under the contract to McWilliams, who at all times has been Jenkins's and defendants' adversary. Plus, *Germain* did not conclude that Liberty was the real party in interest for all claims or judgments against Jenkins. It concluded only that substitute service on Jenkins via service on Liberty was proper in that case when service had first been attempted in multiple other ways. *Id.* at *6.

McWilliams's argument is not supported by either case law or common sense. Only the insured can sue his insurance company for bad faith when the insurance company's failure to settle a case exposes the insured to out-of-pocket liability. Absent an assignment from the insured, there is no basis for a third party to bring this claim against an insurance company with whom he had no contract. Since this defect was not corrected in McWilliams's proposed amended complaint, further amendment would be futile.

### B. Negligence

Liberty next requests dismissal of McWilliams's negligence claim. McWilliams's negligence claim is also based on Liberty's (and Resolute's) alleged failure to engage in reasonable settlement discussions throughout the state-court proceedings. "The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (internal quotation marks omitted). McWilliams has not adequately alleged these elements.

First, McWilliams has not established that Liberty owed McWilliams any duty. "Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Mizenko v. Intertech Digital Ent., Inc.*, 166 N.Y.S.3d 366, 368 (3d Dep't 2022) (citation omitted). "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Neidhart v. K.T. Brake & Spring Co.*, 866 N.Y.S.2d 352, 353 (2d Dep't 2008) (citation omitted). McWilliams was never a party to any insurance contract with Liberty and does not allege to have any other relationship with Liberty that would give rise to any duty. *Cf Martinez v. Nat'l Amusements, Inc.,* 855 N.Y.S.2d 82, 82–83 (1st Dep't 2008) ("[I]t has long been the rule that the duty of care owed by a contractor does not extend to noncontracting third parties."). Just the opposite, throughout the litigation, Liberty was McWilliams's opponent. While the Court wishes that all litigants regarded themselves as having a duty of care toward their adversaries—the world would be a better place—that's not the law.

Second, McWilliams has not established that there was any injury sustained by the alleged negligence. Indeed, Liberty's alleged failure to engage in settlement discussions led to a substantially higher judgment for McWilliams than any settlement would have achieved. So while Jenkins may have been injured by virtue of its increased liability (if it hadn't been dissolved two decades ago), the Court does not see how McWilliams was injured. *See Browdy v. State-Wide Ins. Co.,* 289 N.Y.S.2d 711, 718 (N.Y. Sup. Ct. 1968) (dismissing negligence claim against insurance company based on settlement practice because plaintiff "could have sustained no damage by reason of the conduct of the insurance company" since had there been a settlement "within the policy limits, he would have received less than the amount of his judgment"). Neither of these defects can be resolved through further amendment.

Citing primarily cases outside of New York, McWilliams argues that negligent "settlement conduct itself remains actionable" in certain circumstances. Dkt. 38 at 9. The Court agrees, but the cause of action to vindicate such conduct is a claim sounding in bad faith, and the proper plaintiff is the insured or their assignee.

### C. Tortious interference

Finally, Liberty seeks dismissal of McWilliams's tortious-interference claim. "[U]nder New York law, tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional

procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012) (cleaned up). In his complaint, McWilliams identifies Liberty's insurance policy as the contract at issue. Compl. ¶¶ 98–103. But McWilliams is not a party to that contract. *See LoPresti v. Massachusetts Mut. Life Ins. Co.*, 820 N.Y.S.2d 275, 277 (2d Dep't 2006) (affirming dismissal of tortious-interference claim because "plaintiff was not a party to, nor a third-party beneficiary of, the contracts with which the respondents allegedly interfered"). And even if he was, McWilliams is required to identify a contract between himself and a third party that Liberty interfered with. The only contract at issue here is one that Liberty is a party to. McWilliams's claim therefore fails (and cannot be cured through amendment) because Liberty cannot tortiously interfere with its own contract. *See TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005) ("One asserting a tortious interference claim must also show that the defendant was not a party to the contract with which he allegedly interfered.").

### III. Resolute's motion to dismiss

Finally, Resolute moves to dismiss the bad-faith, negligence, and tortious-interference claims against it. McWilliams's claims warrant dismissal for the same reasons as the claims against Liberty. First, McWilliams cannot bring a bad-faith claim when he was not an insured and did not have an assignment from any insured. Second, McWilliams is unable to prove negligence when Resolute owed him no duty of care and Resolute's alleged failure to engage in reasonable settlement discussions resulted in McWilliams receiving a higher judgment than he would have received through a settlement. Finally, McWilliams's tortious-interference claim fails because McWilliams does not allege that he was a party to any contract with a third party. McWilliams argues that he is a third-party beneficiary of the insurance agreement as a judgment creditor of Jenkins. But McWilliams's complaint does not provide any allegations indicating that he has third-party beneficiary status under New York law, nor does his proposed amended complaint seek to add any such allegations. *See Found. Ventures, LLC v. F2G, Ltd.,* 2010 WL 3187294, at *9 (S.D.N.Y. Aug. 11, 2010).

McWilliams cites *Konstantin v. Certain Underwriters at Lloyd's London*, 2018 WL 746154 (N.Y. Sup. Ct. Feb. 7, 2018). There, a New York trial court denied Resolute's motion to dismiss a judgment creditor's tortious-interference claim. *Id.* at *5. In the court's recitation of the facts, it said that the "plaintiff alleged that it had a contract with the third-party, defendant insurers through Tishman [the policyholder]." *Id.* at *4. There's no other discussion in the court's opinion concerning the basis for holding that the plaintiff had established that it either had, or was a third-party beneficiary of, a contract with the insurers. Was there an assignment? Were there just other arguments that Resolute focused its attention on in that case? There's just not enough in *Konstantin* for it to have any persuasive value here.

But there's a more basic point here: What is the alleged tortious interference? According to the complaint, it is that Resolute and Liberty "have failed and refused, and continue to fail and refuse,

to pay or reimburse Plaintiff all or any part of the tendered judgment, or to provide any explanation or justification for the refusal to pay." Am. Compl. ¶ 99. Yet the judgment was obtained *this year,* and the appellate process has apparently still not run its course. And now McWilliams has brought a case to obtain relief against the insurers to seek payment up to the policy limit, which is what New York law and the insurance policies at issue provide for. While there may be some cases—even some cases involving Resolute—where the facts and circumstances might warrant relief on a claim of this kind, this is not one of them.

### IV.  Liberty's motion to strike

Liberty also seeks to strike several allegations from McWilliams's complaint. Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." To succeed on a motion to strike, "the movant must show (1) that no evidence in support of the allegation would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Goolden v. Wardak*, 2020 WL 4271695, at *7 (S.D.N.Y. July 23, 2020) (internal quotation marks omitted).

Liberty's only argument related to prejudice is that the allegations "potentially open[ ] the door to burdensome discovery that has nothing to do with the actual claims in this case." Dkt. 33 at 18. But the allegations that Liberty has asked the Court to strike relate almost entirely to Resolute. So it's not clear how they would subject Liberty to additional discovery. Plus, the complaint's allegations don't dictate the scope of discovery; any discovery sought by McWilliams must comply with Federal Rule of Civil Procedure 26(b)(1) and the rules of this Court. The Court will police those lines in this case.

Liberty also says the Court should strike McWilliams's request for "punitive or exemplary damages and/or attorney's fees." Dkt. 33 at 19. The only remaining claim against Liberty is under New York Insurance Law § 3420, which permits damages only up to "the amount of the applicable limit of coverage" under the insurance contract. N.Y. Ins. L. § 3420(a)(2), (b)(1). McWilliams does not address this request to strike in his opposition brief, "effectively conced[ing]" the argument. *Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012). So Liberty's motion to strike is granted to the extent that McWilliams seeks punitive damages, exemplary damages, or attorneys' fees against Liberty.

### CONCLUSION

Affiliated FM's motion to dismiss is DENIED. Liberty's motion to dismiss and to strike is DENIED in part and GRANTED in part, and Resolute's motion to dismiss is GRANTED. McWilliams should file a second amended complaint, amending his § 3420 claim against Affiliated FM and Liberty, no later than **September 3, 2024**.

By **September 10, 2024**, the parties should file a Proposed Civil Case Management Plan and Scheduling Order, which is available at https://nysd.uscourts.gov/hon-arun-subramanian. Given the straightforward issues remaining in this case, the parties should propose a schedule for

discovery based on a February 2025 trial date. The Proposed Civil Case Management Plan should also include a proposed week for trial in February that works for all parties.

The Clerk of Court is directed to terminate Dkts. 30, 32, and 44 and terminate Resolute as a defendant in this case.

SO ORDERED.

Dated: August 23, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge